UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case Number: 21-23764-CIV-MARTINEZ

SHARON VAZQUEZ,

    Plaintiff,

v.

TARGET CORPORATION,

    Defendant.
_____/

## **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**THIS CAUSE** came before this Court on Defendant Target Corporation's Motion for Summary Judgment (the "Motion"), (ECF No. 19). This Court has reviewed the Motion, pertinent portions of the record, and applicable law and is otherwise fully advised of the premises. Accordingly, after careful consideration, the Motion is **GRANTED** for the reasons set forth herein.

**I.     FACTUAL BACKGROUND**

The following pertinent facts are undisputed unless otherwise noted. When the facts are in dispute, they are taken in the light most favorable to the nonmovant, Plaintiff Sharon Vazquez. *See Chapman v. Am. Cyanamid Co.*, 861 F.2d 1515, 1518 (11th Cir. 1988).

The instant action arises from a slip-and-fall incident that occurred on April 28, 2019, at Defendant's store in Miami, Florida. (Joint Statement Material Facts (the "JSMF") ¶ 1, ECF No. 21.) On that day, Plaintiff and her mother entered Defendant's store, which was brightly lit, neat, and orderly, and proceeded directly to the health and beauty department. (*Id.* ¶¶ 4–5.) Ultimately, Plaintiff alleges that she slipped on a "white substance that appeared to be hair conditioner" while walking through the shampoo and conditioner aisle in the health and beauty department. (*Id.* ¶¶ 7–

8.) At the time of the incident, Plaintiff and her mother walked side by side up the aisle, with Plaintiff on the right-hand side. (Pl.'s Am. Statement Material Facts ("Pl.'s SMF") ¶ 29, ECF No. 40.) The substance was on the right side of the aisle. (*Id.* ¶ 28.) Neither Plaintiff nor her mother noticed the substance until after Plaintiff's fall, (JSMF ¶ 9), and Plaintiff admits that nothing distracted her or obstructed her view of the substance on the floor before the incident, (*id.* ¶ 10). Plaintiff stated that she did not know from where the substance came. (Def.'s Statement Material Facts ("Def.'s SMF") ¶ 17, ECF No. 20.) But the Parties agree that there were bottles of hair conditioner on display for sale in the aisle where Plaintiff fell, (Pl.'s SMF ¶ 26), and the substance appeared to be hair conditioner, (JSMF ¶ 8). The Parties provide that the following photographs accurately depict the appearance of the substance immediately after the incident:

 

(JSMF Ex. B, at 2–3, ECF No. 21-2 (black markings provided by Plaintiff).)

Surveillance footage of the health and beauty department on the day and around the time of the incident (the "Surveillance Footage")[*] shows that at least twenty-eight shoppers traveled in and out of the aisle where Plaintiff fell between 7:30:00 p.m. (the time the Surveillance Footage begins) and 8:03:02 p.m. (the last time a shopper was in the aisle where Plaintiff fell before Plaintiff entered the aisle). (Feb. 10, 2021, Surveillance Footage ("SF") 0:00–33:02, ECF No. 37-1.) Eleven of those twenty-eight shoppers traveled close to if not exactly over where Plaintiff fell between 7:46:00 p.m. and 8:15:18 p.m., (*id.* at 16:00–35:18), with the last shopper before Plaintiff departing the aisle at 8:03:02, (*id.* at 33:02), just over two minutes before Plaintiff fell, (*id.* at 33:02–35:19). At least four of those eleven shoppers spent several minutes examining products on the shelves in that aisle. (*Id.* at 16:07–22:54 (two shoppers); *id.* at 21:52–25:02 (one shopper); *id.* at 28:58–33:02 (one shopper).)

The Surveillance Footage first shows Plaintiff and her mother in the aisle next to where Plaintiff fell at approximately 7:51:20 p.m. (*Id.* at 21:20.) Plaintiff stayed in that aisle for approximately ten minutes before leaving to another aisle. (*Id.* at 31:50.) At approximately 8:04:44 p.m., Plaintiff again appears on the Surveillance Footage entering the aisle where she eventually fell. (*Id.* at 34:44.) Plaintiff's fall is captured on the Surveillance Footage at 8:05:19 p.m. (*Id.* at 35:19.) At approximately 8:05:34 p.m., Plaintiff's mother leaves Plaintiff in the aisle where she fell to search for one of Defendant's employees. (*See id.* at 35:34.) Plaintiff's mother and one of Defendant's employees arrive to where Plaintiff fell at approximately 8:08:01 p.m. (*Id.* at 38:01.)

Following the incident, Plaintiff filed the Complaint, which asserts one count of negligence against Defendant, in the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida.

---

[*] The accuracy of the Surveillance Footage is undisputed.

(*See generally* Compl., ECF No. 1-2 at 2–5.) Defendant timely removed this case because the Parties are completely diverse and the amount in controversy exceeded $75,000.00 at the time of removal. (*See generally* Not. Removal, ECF No. 1.) Now, Defendant moves for summary judgment on Plaintiff's claim. (*See generally* Mot., ECF No. 19.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court must grant summary judgment if "the depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , or other materials . . . show . . . that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). "The moving party bears the initial burden to show, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark*, 929 F.2d at 608.

When the moving party has carried its burden, the party opposing summary judgment must do more than show that there is "metaphysical doubt" as to any material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Indeed, Rule 56 "requires the nonmoving party to go beyond the pleadings and, by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate *specific facts showing that there is a genuine issue for trial*." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (emphasis added) (cleaned up). "[C]onclusory allegations without specific supporting facts have no probative value." *Myers v. Bowman*, 713 F.3d 1319, 1327 (11th Cir. 2013) (citing *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985)).

At summary judgment, this Court must view the evidence and draw inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus.*, 475 U.S. at 586; *Chapman*, 861 F.2d at 1518; *see also Chapman*, 861 F.2d at 1518 ("All reasonable inferences arising from the undisputed facts should be made in favor of the nonmovant."). "However, an inference based on speculation and conjecture is not reasonable." *Id.* (citing *Blackston v. Shook & Fletcher Insulation Co.*, 764 F.2d 1480, 1482 (11th Cir. 1985)). "Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

When ruling on a motion for summary judgment, courts may consider video surveillance footage in the record when there is no dispute as to the video's accuracy. *See Scott v. Harris*, 550 U.S. 372, 380–381 (2007); *Donnelly v. Wal-Mart Stores E., LP*, 844 F. App'x 164, 169 (11th Cir. 2021) (affirming district court's grant of summary judgment where a reasonable jury, even after reviewing video footage of incident at issue, could not find that defendant had actual or constructive notice of substance on floor); *Kinchen v. Target Corp.*, No. 14-CV-14483, 2015 WL 13777960, at *2 (S.D. Fla. Nov. 18, 2015) (granting summary judgment in defendant's favor where surveillance footage proved that defendant could not be found to have constructive notice of substance on floor). "[W]here an accurate video recording completely and clearly contradicts a party's testimony, that testimony becomes incredible." *Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013); *Deakins v. Wal-Mart Stores E. LP*, No. 21-80935-CV, 2022 WL 1019505, at *2 (S.D. Fla. Mar. 3, 2022) (finding summary judgment in defendant's favor because, in part, plaintiff's testimony contradicted video surveillance footage in record). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

'genuine issue for trial.'" *See Matsushita Elec. Indus.*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 270 (1968)).

**III. DISCUSSION**

Defendant argues that it is entitled to summary judgment because there is no genuine dispute of material fact that it did not have actual or constructive notice of the substance on which Plaintiff slipped. (Mot. 4–11.) This Court agrees.

Preliminarily, because this Court sits in diversity over this action, it is required to apply the forum state's substantive law. *See, e.g.*, *Bravo v. United States*, 577 F.3d 1324, 1325 (11th Cir. 2009) (per curiam). To prevail in a negligence action under Florida law, Plaintiff must prove that (1) Defendant owed her a duty, (2) Defendant breached that duty, (3) the breach proximately caused her injuries, and (4) the breach resulted in damages. *See Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003). Defendant only challenges the second element, (*see* Mot. 4–11), so this Court need only determine whether Defendant is entitled to summary judgment because it did not breach its duty to Plaintiff, *see Welsh v. Metro. Dade Cnty.*, 366 So. 2d 518, 521 (Fla. 3d DCA 1979).

"[N]egligence may not be inferred from the mere happening of an accident alone." *Belden v. Lynch*, 126 So. 2d 578, 581 (Fla. 2d DCA 1961). To establish that Defendant breached its duty here, Plaintiff must show that Defendant "failed to maintain its property in a reasonably safe condition, or that it failed to warn the plaintiff of a concealed peril of which it either know or should have known and which could not have been discovered by the plaintiff through the exercise of ordinary care." *See Cooper Hotel Servs., Inc. v. MacFarland*, 662 So. 2d 710, 712 (Fla. 2d DCA 1995) (citing *Spadafora v. Carlo*, 569 So. 2d 1329, 1330 (Fla. 2d DCA 1990)). "If a person slips and falls on a transitory foreign substance in a business establishment, the injured person

must prove that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it." § 768.0755(1), Fla. Stat. (2021).

A business has actual notice of a dangerous condition when its employees or agents "know of or create the dangerous condition." *Barbour v. Brinker Fla., Inc.*, 801 So. 2d 953, 957 (Fla. 5th DCA 2001) (citing *Food Fair Stores, Inc. v. Trussell*, 131 So. 2d 730, 732 (Fla. 1961)). Here, the undisputed record reveals that there is no evidence that Defendant had actual notice of the dangerous condition at issue. This Court, therefore, turns to determine whether any genuine dispute of material fact exists regarding whether Defendant had constructive notice of the transitory foreign substance. *See Colon v. Outback Steakhouse of Fla., Inc.*, 721 So. 2d 769, 771 (Fla. 3d DCA 1998) ("Where, as here, there is no evidence of the premises owner's actual notice of the hazardous condition of its property, the plaintiff would necessarily have to proceed against the owner on the theory that the owner had constructive notice.").

Plaintiff may prove constructive notice "by circumstantial evidence showing that: (a) The dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition; or (b) [t]he condition occurred with regularity and was therefore foreseeable." § 768.0755(1). "An owner's constructive notice of the hazardous condition may be established circumstantially with 'evidence leading to an inference that the substance has been on the floor for a sufficient length of time' such that the premises owner in the exercise of reasonable care should have known of the condition." *Colon*, 721 So. 2d at 771 (quoting *Gonzalez v. B & B Cash Grocery Stores, Inc.*, 692 So. 2d 297, 298 (Fla. 4th DCA 1997)).

Constructive notice may be inferred where there is testimony of "dirt, scuffing, or tracks in a substance . . . ." *Woods v. Winn Dixie Stores, Inc.*, 621 So. 2d 710, 711–712 (Fla. 3d DCA 1993) (citing *Md. Maint. Serv., Inc. v. Palmieri*, 559 So. 2d 74, 75–76 (Fla. 3d DCA 1990)). The

"mere presence" of a substance on the floor, however, "is not enough to establish constructive notice . . . ." *Delgado v. Laundromax, Inc.*, 65 So. 3d 1087, 1090 (Fla. 3d DCA 2011) (citing *Broz v. Winn-Dixie Stores, Inc.*, 546 So. 2d 83, 83 (Fla. 3d DCA 1989)). "Without some evidence of the length of time the dangerous condition existed, liability cannot be determined under a constructive notice theory." *Barbour*, 801 So. 2d at 957 (citing *Wal-Mart Stores, Inc. v. King*, 592 So. 2d 705, 707 (Fla. 5th DCA 1991)). Moreover, "the fact that there was no inspection for a given length of time in itself provides no proof that the defect was actually there for a sufficient period to place a landowner on reasonable notice of its existence." *King*, 592 So. 2d at 707 (first citing *Smith v. Winn Dixie Stores, Inc.*, 528 So. 2d 987 (Fla. 3d DCA 1988); and then citing *McCanick v. W.J.A. Realty Ltd.*, 516 So. 2d 1129, 1130 n.1 (Fla. 3d DCA 1987)).

In her response in opposition to the Motion, Plaintiff focuses on one female shopper who she claims spent "approximately [twenty] minutes" opening bottles while standing or kneeling on the floor. (Resp. 5, ECF No. 23.) She argues that a reasonable inference can be drawn that this shopper caused the liquid substance to be on the floor, which creates a presumption of [constructive] notice on the part of" Defendant. (*Id.*) As further evidence to support Plaintiff's proffered inference, she states that the Surveillance Footage shows "three [shoppers] traversing the aisle while avoiding the right edge of the aisle where . . . the incident occurred." (*Id.*) As Plaintiff posits, the shopper's "highly unusual behavior . . . should have been noticed by either [Defendant's] employees on the store floor or by [Defendant's] employees watching the security footage, if they had been exercising ordinary care." (*Id.*) Last, Plaintiff argues that the fact that Defendant's employees were "in close proximity to where the incident occurred" places Defendant on constructive notice because they could or should have discovered the dangerous condition if they were exercising ordinary care under the circumstances. (*Id.* at 7–8.)

The Surveillance Footage speaks for itself. The undisputed record shows that at least eleven shoppers were present in the aisle where Plaintiff fell within twenty minutes of her fall. (SF at 16:00–35:18.) Each of those shoppers walked close to if not exactly over the area where Plaintiff fell. (*Id.*) Just three minutes before Plaintiff's fall, a shopper walked—without incident— over the very spot where Plaintiff fell. (*Id.* at 32:40–33:02.) And the shopper Plaintiff argues created the dangerous condition (the shopper Plaintiff argues was exhibiting "highly unusual behavior") was actually in the aisle for fewer than ten minutes, from 7:46:07 p.m. to 7:55:54 p.m.—not *twenty minutes* as Plaintiff claims. (*Id.* at 16:07–25:54.) Moreover, none of the shoppers who were in the aisle once the subject shopper left avoided the right side of the aisle. (*See id.*)

Plaintiff cites to *Lynch v. Target Stores, Div. of Dayton Hudson Corp.*, 790 So. 2d 1193, 1194 (Fla. 4th DCA 2001), for the proposition that the fact that a foreign substance was on the floor for a minimum of fifteen minutes was sufficient time to put the business owner on constructive notice. (Resp. 6.) The fact remains, however, that no reasonable inference can be made regarding how long the substance was on the floor without engaging in impermissible speculation. The Surveillance Footage shows numerous shoppers walking over the incident area immediately before Plaintiff fell, and yet, the substance here appeared perfectly white and was without any evidence of footprints (other than that created by Plaintiff when she fell), track marks, dirt, discoloration, or any other evidence that would tend to show that the substance was on the floor for any amount of time to impute constructive notice to Defendant. (JSMF Ex. B, at 2–3); *see Palavicini v. Wal-Mart Stores E., L.P.*, 787 F. App'x 1007, 1012–13 (11th Cir. 2019) (affirming summary judgment in favor of defendant where surveillance footage shows "numerous customers walking over the area where [the plaintiff] fell" and "where [the plaintiff] cannot

identify when the liquid presented itself."). "To infer based on these undisputed facts that the liquid was on the floor for a sufficient period of time to charge [Defendant] with constructive notice would require assuming facts not supported by the record." *See Palavicini*, 787 F. App'x at 1013 n.3; *see also King*, 592 So. 2d at 706–07 (reversing a jury verdict in favor of a plaintiff because substance displayed no "obvious signs of age, such as skid marks, smudges, dirt or the like" and no evidence existed about how or when substance got on floor). Ultimately, Plaintiff cannot point to any record evidence that would allow a reasonable juror to permissibly infer who caused the dangerous condition or when the substance presented itself. Without such evidence, determining the length of time the dangerous condition existed is impossible without engaging in rank speculation, which this Court cannot allow. *See Barbour*, 801 So. 2d at 957; *Palavicini*, 787 F. App'x at 1012–13.

Plaintiff's other arguments are also without merit. Plaintiff offers—and the record reveals—no evidence that the subject female shopper's actions are "highly unusual" such that they would place Defendant on constructive notice that a hazardous condition was being created. In fact, Plaintiff herself is seen spending more than ten minutes in the aisle adjacent to where she fell just under five minutes before the fall. (*Id.* at 21:20–31:50.) The record likewise reveals no evidence that conditioner-like substances spill onto the floor with "such regularity" to put Defendant on constructive notice. *See Brooks v. Phillip Watts Enters., Inc.*, 560 So. 2d 399, 342–43 (Fla. 1st DCA 1990) (reversing trial court's order granting summary judgment in defendant's favor where record contained evidence that defendant knew "of the slippery condition of the floor when wet, and [knew] that water came in the front area of the store in rainy weather."). While, of course, one could speculate that conditioner-like substances regularly spill onto the floor at stores with health and beauty departments like Defendant's, this Court declines to do so as "[s]peculation

does not create a genuine issue of fact[,]" *see Cordoba*, 419 F.3d at 1181, and nothing in the record shows that such spills occur regularly at Defendant's store, *cf. Brooks*, 560 So. 2d 342–43 (holding that record evidence supported a reasonable jury's finding that defendant was on constructive notice of dangerous condition because, when it rained, water would regularly seep into defendant's establishment).

Last, while at least one of Defendant's employees was escorted by Plaintiff's mother to where Plaintiff fell within three minutes of the incident, Plaintiff provides no facts concerning where Defendant's employees were before Plaintiff fell. In other words, Plaintiff cannot point to any record evidence that shows any employee was close enough to have potentially seen the substance before the incident. *See Donnelly*, 844 F. App'x at 169 ("[The plaintiff] does not explain how her 'employee in the vicinity' argument satisfies her burden . . . to show that [the defendant] had constructive knowledge of the dangerous condition . . . ."). To be sure, the cases upon which Plaintiff relies to support her argument are unpersuasive: Each case involves at least one of the defendant's agents standing close enough that he or she could or should have seen the dangerous condition. (*See* Resp. 8–9 (first citing *Castellanos v. Target Corp.*, No. 10-62456-CIV, 2011 WL 5178334, at *4 (S.D. Fla. Oct. 14, 2011) (defendant's employees were estimated to be eight or ten feet away from dangerous hazard); then citing *Winn-Dixie Stores, Inc. v. Guenther*, 395 So. 2d 244, 245 (Fla. 3d DCA 1981) (store manager stood on elevated platform within store and, by looking at where plaintiff fell, would have been able to see dangerous condition); then citing *Greenleaf v. Amerada Hess Corp.*, 626 So. 2d 263, 263 (Fla. 4th DCA 1993) (noting that dangerous condition "was only five to six feet from the glass door of the mart where [defendant's] employee could potentially see the spill that was large enough that [the plaintiff] was 'soaked' when she fell in it."); and then citing *Markowitz v. Helen Homes of Kendall Corp.*, 826 So. 2d 256, 261 (Fla.

11

2002) (three of defendant's employees "were in the immediate vicinity" of and could have seen dangerous condition).)  Therefore, Plaintiff's argument that Defendant had constructive notice because its employee was "minutes away" from the dangerous condition also fails.

Ultimately, this Court reiterates that, "[w]ithout some evidence of a length of time the dangerous condition existed, liability cannot be determined under a constructive notice theory." *Barbour*, 801 So. 2d at 957 (citing *King*, 592 So. 2d at 707).  This Court rejects Plaintiff's invitation to engage in rank speculation regarding when and how the substance made it onto the floor.  Even when construing all justifiable inferences in Plaintiff's favor, the undisputed record before this Court shows that Defendant had neither actual nor constructive notice of the substance on which Plaintiff slipped. *See Barronette*, 2018 WL 6261507, at *3.  Defendant, therefore, cannot be held liable to Plaintiff for negligence under Florida law, so the Motion is due to be granted.  *See Delgado*, 65 So. 3d at 1090 (affirming summary judgment in defendant's favor and holding that no facts supported a permissible inference that substance was on floor for a long period prior to plaintiff's slip and fall); *King*, 592 So. 2d at 706–07; *Palavicini*, 787 F. App'x at 1013 (same); *Garcia*, 2013 WL 12101087, at *2 (granting summary judgment in defendant's favor because plaintiff failed to support an inference of constructive notice because "[i]t would be sheer speculation for a reasonable finder of fact to conclude that the water had been on the floor for long enough to put [the defendant] on constructive notice." (first citing *Sammon v. Target Corp.*, No. 11-cv-1258, 2012 WL 3984728, at *4 (M.D. Fla. Sept. 11, 2012); and then citing *Feinman v. Target Corp.*, 11-62480-CIV, 2012 WL 6061745, at *6 (S.D. Fla. Dec. 6, 2012))); *cf. Newalk v. Fla. Supermarkets, Inc.*, 610 So. 2d 528, 529 (Fla. 3d DCA 1992) (concluding testimony that substance on floor "appeared old" was enough evidence to infer constructive notice); *Teate v. Winn-Dixie Stores, Inc.*, 524 So. 2d 1060, 1061 (Fla. 3d DCA 1988) (concluding that water on

floor around where plaintiff slipped and fell on packaged frozen peas supported a permissible inference that peas were on floor for a long enough period).

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. The Motion, (ECF No. 19), is **GRANTED**.

2. The Clerk is **DIRECTED** to **CLOSE** this case and **DENY** all pending motions as **MOOT**.

3. Final judgment shall enter via separate order.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 10th day of November, 2022.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
All Counsel of Record